# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 05 CR 0922 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| JEREMY GOLDBERG, ) | |
| ) | |
| Defendant. ) | |

## SENTENCING MEMORANDUM AND ORDER

On March 24, 2006, defendant Jeremy Goldberg ("Goldberg") pled guilty to a single count of possessing images constituting child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and was sentenced to one day in prison, time served, and ten years of supervised release. On June 27, 2007, the Seventh Circuit reversed the sentence and remanded the case to this court for resentencing. *U.S. v. Goldberg*, 491 F.3d 668, 674 (7th Cir. 2007). For the reasons set forth below, the court sentences Goldberg to 48 months imprisonment and recommends FMC Devens as the place of incarceration, where he may be eligible to enter the Sex Offender Treatment Program. Additionally, the court sentences Goldberg to ten years of post-release supervision.

In its opinion remanding the case to this court for resentencing, the Seventh Circuit held that the court's prior sentence of no imprisonment and ten years of close supervision for this offense was unreasonable. *Goldberg*, 491 F.3d at 673. However, since the Seventh Circuit's decision, the U.S. Supreme Court has held that district courts have more discretion, and that courts of appeals are required to give deference to their

1

decisions. *See Gall v. U.S.*, 128 S. Ct. 586 (2007); *Kimbrough v. U.S.*, 128 S. Ct. 558 (2007). Still, post-*Gall* and post-*Kimbrough*, the Seventh Circuit has reaffirmed its conclusion in this case. *See US v McIlrath*, 512 F.3d 421, 426 (7th Cir. 2008). Hence, the court is compelled to conclude that, despite *Gall* and *Kimbrough*, the result on appeal would be the same in this case were the original sentence to be re-imposed.

The explanation given for that sentence was the best that this court could do, and, in this court's understanding, a fair reading of that explanation is not consistent with the Seventh Circuit's assessment of it. Regardless, the court believes that the court of appeals opinion quarrels not only with the way the sentence was justified, but quarrels with the sentence itself. Thus, the Seventh Circuit states:

> A prison sentence of one day for a crime that Congress and the American public consider grave, in circumstances that enhance the gravity (we refer to the character of some of the images), committed by a convicted drug offender, does not give due weight to the "nature and circumstances of the offense," "promote respect for the law," or "provide just punishment for the offense." It does not "afford adequate deterrence to criminal conduct." And it creates an unwarranted sentence disparity, since similarly situated defendants are punished with substantial prison sentences.

*Goldberg*, 491 F.3d at 671-72.[1]

In short, the Seventh Circuit's view is that even after *Gall* and *Kimbrough*, its decision in this case would be the same. The sentence of this court must accordingly give more weight to the punitive factors listed in § 3553 and less weight to the likelihood that the crime was not the result of sexual deviance, that the defendant likely does not pose a

---

[1] The Seventh Circuit stated that this case, involving "hundreds of images," should perhaps be treated differently from a case involving a "handful of images" not as aggravated as these. *Id.* at 672. Thus, the number of images and the nature of those images were issues that the court of appeals considered important. Furthermore, whereas many reported cases see child predators as different from people who view child pornography but are not child predators, the court of appeals seems to view this as a distinction without a difference. *See, e.g.*, *U.S. v. Smith*, No. 06-4885, 2008 WL 1816564, at *1 (4th Cir. 2008); *U.S. v. Polizzi*, No. 06-CR-22 (JBW), 2008 WL 877164, at *20 (E.D.N.Y. 2008). It evidently views looking at child pornography as serious a crime as its actual production.

2

danger to society, and that the defendant is more likely to be rehabilitated with a program of lengthy and intense supervision than with a term of protracted incarceration.

The court turns, therefore, to an analysis of the factors underlying the sentence to be imposed. As an initial matter, the Government insists that the guideline range in this case should be calculated under the 2006 Guidelines. When using the 2006 Guidelines, the offense level is 31, which, with a criminal history category I, yields a sentencing range of 108-135 months, limited by the statutory maximum of 120 months. The law is clear, however, that although the court is permitted to consider imposing sentence under the 2006 Guidelines, it is not constrained to do so, and may impose sentence under the 2003 Guidelines, which both the Government and the Probation Office agreed applied to this case at the time of the initial sentencing. *See U.S. v. Monti*, 477 F. Supp. 2d 943, 945 (N.D. Ill. 2007) (citing *U.S. v. Hauptman*, 111 F.3d 48, 51 (7th Cir. 2007)). Under the 2003 Guidelines, the original offense level was 26 and the corresponding sentencing range was 63-78 months. However, the Seventh Circuit stated that the court must add a 4-point enhancement for the sadomasochistic nature of some of the images, resulting in a final offense level of 30 and a range of 97-121 months.

The court has also considered the sentences imposed in comparable cases in its sister courts. The court recognizes, of course, that no two cases are identical and reported cases may not describe all salient facts. However, it is struck by the inconsistency in the way apparently similar cases are charged and sentenced. In its analysis, the court first considered district court cases that were not appealed, subsequent to *Gall* and *Kimbrough*, involving defendants in Criminal History Category I. For example, in the District of Utah, a 120-month sentence was given for an offence with a calculated

3

guideline range of 135-168 months, (5,129 images). *See Kirkham v. U.S.*, No. 2:07-CV-414 TC, 2008 WL 1758518, at *3 (D. Utah, 2008). The District of Nebraska gave a 24-month sentence in a 3000-image case with a guideline range of 63-78 months; in that case, the defendant indicated that he possessed the images but did not intend to share them. *U.S. v. Sudyka*, No. 8:07CR383, 2008 WL 1766765, at *10 (D. Neb. 2008). In another district of Nebraska case, involving 800 images, with an advisory guideline range of 46-57 months, a sentence of 24 months was also given. *U.S. v. Baird*, No. 8:07CR204, 2008 WL 151258, at *7 (D.Neb. 2008). In the Eastern District of Tennessee, 135 months was given to a defendant who had knowingly received child pornography via computer (guideline range of 135 to168 months). *U.S. v. McElheney*, 524 F.Supp.2d 983, 1007 (E.D. Tenn. 2007). Finally, in a 200-image case in which the defendant was charged with both possession and distribution, Judge Manning of this district gave an 84 month sentence; the guideline range was 168 to 210 months with a statutory minimum of 60 months. *U.S. v. Thomas*, No. 06 CR 535 2008, WL 597594, at *5 (N.D.Ill. 2008).

In cases that went to the courts of appeal, a similar disparity is seen. A sentence of 57 months was affirmed by the Fifth Circuit in a case in which thousands of images were found stored on 4000 compact discs. *U.S. v. Perez*, 484 F.3d 735, 745 (5th Cir. 2007). In a 2007 Sixth Circuit case, where there were 992 images involved and the psychological profile indicated that the defendant was not a pedophile or sexual predator, a sentence of 180 months was affirmed; the guideline range was 210-262 months. *U.S. v. Kirchhof*, 505 F.3d 409, 410 (6th Cir. 2007). In *US v. Grinbergs*, a sentence of 12 months and a day was reversed by the Eighth Circuit. 470 F.3d 758, 761-62 (8th Cir. 2006). The Eighth Circuit's decision in that case, which featured a number of images

similar to this one, and in which the guidelines were 46-57 months, was vacated by the Supreme Court after *Gall*, and remanded to the district court for resentencing. *Grinbergs v. U.S.*, 128 S. Ct. 859, 850 (2008), *remanded to district court for resentencing*, No. 06-2369, 2008 WL 1723473, at *1 (8th Cir. 2008). In another Eighth Circuit case, in which the defendant operated a child pornography file server (as in the instant case), and in which the defendant was found to possess 45-50 images, some sadomasochistic, together with psychiatric testimony that defendant was not a pedophile, a sentence of 151 months, at the low end of the guideline range, was affirmed. *U.S. v. Kerr*, 472 F.3d 517, 519 (8th Cir. 2006). A sentence of 180 months (the statutory mandatory minimum) was affirmed by the Ninth Circuit in a multi-count case involving 10,000-12000 (including some sadomasochistic) images. *U.S. v. Meiners*, 485 F.3d 1211, 1212 (9th Cir. 2007). A sentence of 84 months (guideline range of 151-188 months) was affirmed by the Eleventh Circuit in a 981-image case where the defendant had been previously convicted of lewd acts on a child and diagnosed as a pedophile. *U.S. v. McBride*, 511 F.3d 1293, 1295 (11th Cir. 2007).

Finally, in *U.S. v. Polito*, an unpublished Fifth Circuit case, the court of appeals affirmed a sentence of 5 years probation in a case involving a file server set up by the defendant, a college student, who possessed hundreds of images. 215 Fed. Appx. 354, 355 (5th Cir. 2007). The record included psychiatric evidence and a professional opinion, as in this case, that the defendant was not a pedophile, but had a problem with poor judgment and impulsivity. *Polito*, 215 Fed. Appx. at 355-56. The district court found it important, and the Fifth Circuit, unlike the Seventh Circuit, found it significant, that there was no threat that the defendant would conduct predatory activities on children.

*Id.* at 356-57.  The court was also influenced by the district court's stated consideration of the fact that the defendant had no prior criminal record[2] and that the defendant had proceeded with his education and obtained gainful employment.  *Id.*

With specific reference to cases in the Seventh Circuit, the court discovered that the court of appeals affirmed sentences of 144 months in a 6500-image case and 330 months in a case with advisory guidelines of 292 to 365 months.  *U.S. v. Lowe*, 516 F.3d 580, 583 (7th Cir. 2008); *U.S. v. Shrake*, 515 F.3d 743, 748-49 (7th Cir. 2008).  In a case involving 300 images and no evidence of actual child molestation, but correspondence which indicated that the defendant was moving that way, the court of appeals affirmed a sentence of 87 months incarceration.  *U.S. v. Baker*, 445 F.3d 987, 988 (7th Cir. 2006).  A sentence of 76 months incarceration was affirmed in a case where the defendant was convicted of possession of 8178 images (some sadomasochistic), 3083 text files and 80 video files.  *U.S. v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006).  The court of appeals affirmed a 55-month sentence (high end of the guideline range) involving 20000 images of child pornography, some sadistic.  A guideline sentence of 37 months was reversed in *US v. Grigg*, on the grounds that it wasn't clear that the district court knew it had authority to deviate from the guidelines.  442 F.3d 560, 561-62 (7th Cir. 2006).

Finally, the court takes notice of *United States v. Wachowiak*, a 2007 Seventh Circuit case affirming a 70-month sentence given by Judge Adelman in a case with an advisory guideline range of 121-151 months (approximately one half of the middle of the guideline range).  496 F.3d 744 (7th Cir. 2007).  Wachowiak was slightly older than

---

[2] By contrast, although the Seventh Circuit refers to this defendant's criminal record as an aggravating factor, *Goldberg*, 491 F.3d at 673, this court knows of no other case where one conviction, for teenaged, possessory personal use marijuana, found in a traffic stop, was viewed as a significant prior criminal record; indeed, Goldberg is in Criminal History Category I, despite that conviction.

Goldberg when he engaged in the subject prohibited activity. *Wachowiak*, 496 F.3d at 745. Wachowiak had hundreds of images, including some sadomasochistic depictions, and there was a statutory minimum sentence of five years. *Id.* Judge Adelman found it significant, and the panel of the Seventh Circuit reviewing his decision did not indicate that his reasoning was flawed, that expert opinion indicated that Wachowiak was unlikely to engage in improper conduct with children. *Id.* at 747. Among the other factors Judge Adelman found important was the significant, lifelong collateral consequences a defendant convicted of possession of child pornography will endure. *Id.* at 754. Furthermore, Judge Adelman was concerned that any period of imprisonment would unduly delay Wachowiak's access to treatment. *Id.* at 747.

Before getting to the specifics of this case, the court notes that it has obtained and studied the statement of Andres Hernandez, Director of the Sex Offender Treatment Program at FCC Butner, which Hernandez gave to Congress, and which Judge Posner discussed. *Goldberg*, 491 F.3d at 673 (citing Statement of Andres E. Hernandez, Director of the Sex Offender Treatment Program Federal Correctional Institution Butner, N.C., concerning "Sexual Exploitation of Children Over the Internet: The Face of a Child Predator and Other Issues." H. Subcommittee on Oversight and Investigations of the H. Comm. on Energy and Commerce, 152 Cong. Rec. D1035-01, D1038 (Sept. 26, 2006), *available at* http://projectsafechildhood.gov/HernandezTestimonyCongress.pdf, p. 2 (last visited April 28, 2008) (hereinafter "Hernandez St."). In its opinion, the Seventh Circuit said that to suggest that sex offender treatment in prison will expose the defendant to dangerous people is "ill informed." *Goldberg*, 491 F.3d at 673. It further maintained that most people in sex offender treatment programs are "convicted of "Possession, Receipt,

Distribution, and Transportation of Child Pornography," just like the defendant." *Id.* It bases this conclusion on the Congressional testimony given by Hernandez. *Id.*

This court also found Hernandez' statement important, although for different reasons that those of the Seventh Circuit. First, Probation Officer Fleig informed the court that the Sex Offender Treatment Program at FCI Butner, which Hernandez described in his statement, has been discontinued, although it exists, oversubscribed, at the Federal Medical Center in Devens, Massachusetts. According to Hernandez' statement, the objective of such programs is to deal with sexual deviance. Hernandez St. at 2. The psychiatric testimony in this case indicates strongly that Goldberg is not sexually deviant. Further, Hernandez reports that of his subject population, many of whom stand convicted of internet offenses which include interstate travel arranged by computer to sexually abuse a minor, only 42 percent were known to be contact sexual criminals at the time of sentencing. *Id.* at 4. However, following treatment, 76 percent reported sexual contact offenses; if the travelers are removed from this sample, 80 percent of the internet offenders reported after treatment that they were actual sexual contact offenders. *Id.* In another sample, the percentage of internet offenders who turned out to be actual sexual contact offenders went from 26 percent known at the time of sentencing to 85 percent after treatment. *Id.* at 5.

From this, the following picture emerges: the Bureau of Prisons' sex offender treatment program is shrinking; it may not be available to all who want and need it; and it is aimed at people who are sexually deviant, which appears not to be the case with Goldberg; as a result, Goldberg may not be admitted into sex offender treatment in prison, even though he is currently receiving treatment, according to Officer Fleig. Since

there is substantial evidence of record that Goldberg has not and will not abuse children sexually, he is unlike most of the sex offenders about whom Hernandez speaks. The Seventh Circuit's view that this is a typical case finds little support in Hernandez' testimony. Thus, it is very possible that, while Goldberg is receiving and benefiting from sex offender treatment and counseling now, he may not receive it while incarcerated. As in *Wachowiak*, any period of incarceration may thus delay needed treatment.

Moreover, whereas Hernandez' testimony, like Judge Adelman's reasoning in *Wachowiak* and this court's reasoning at the time of the original sentencing, hardly supports the contention that downloading child pornography from the internet is a harmless activity, it is not equivalent to the direct physical abuse or sexual molestation of children, or to the production of pornography involving children. It does sustain a market for child pornography, of course, but that market is unfortunately there regardless of what may happen to Goldberg. Importantly, much of the market is driven by compulsive behavior and caused by deviance; whether such behavior can be deterred is doubtful.

Turning to the specifics of this particular sentencing, the court stands by its statement of reasons provided at the initial sentencing. But were the court sentencing now for the first time, it would order a different sentence for reasons that were unknowable to the court at that time. Considering, as the court must, the § 3553 factors in relation to this case, the offense must be regarded as extremely serious and threatening to the victims of child pornography. Consequently, the imposed sentence must afford adequate deterrence to Goldberg and others, and protect the public from further crimes of the defendant. Since the initial sentencing of Goldberg it has learned that these objectives cannot be satisfactorily achieved in this case through supervision.

First, in connection with court-ordered therapy and polygraph testing, the defendant admitted to looking at internet pornography in violation of his supervised release conditions.  Whether he has looked at child pornography is unknown, but, knowing that he would be regularly interviewed by therapists and subjected to lie detector tests, he still chose to look at pornography.  Violating conditions of supervision when there is a virtual certainty that the violation will be discovered suggests either that the defendant cannot help himself, and is irresistibly compelled to look at pornography, or that he is self-destructive and is courting disaster.  Whatever it may mean, barring him from viewing pornography cannot be definitively achieved as a supervised release condition.

Second, when the Probation Office learned that Mr. Goldberg had viewed pornography, it sought permission from the court to enter his residence and seize his computer.  The Probation Office hoped to seize the computer without notice so that it could determine for itself what pornography Goldberg had viewed.  The court willingly gave the Probation Office the order it requested.  However, within a day the court learned that the Probation Office did not believe that its officers had authority to execute such seizures and the FBI refused to assist.  The order thus went unexecuted.  Accordingly, it appears impossible to achieve via supervision the protection of the community that the court believed it could ensure.  Incarceration is unfortunately the only alternative our system provides.

With respect to the duration of the incarceration which must be ordered pursuant to the Seventh Circuit decision, the Seventh Circuit has made clear that § 3553(a)(2)(A),

(B) and (C) require a sentence of a substantial period of incarceration. *Goldberg*, 491 F.3d at 673. The Seventh Circuit stated that:

> [The court] neglected considerations of deterrence and desert, which dominate the federal criminal code, in favor of undue emphasis on rehabilitation, and seemed even to think that any prison sentence, however short, is inconsistent with rehabilitation. That is not the theory of either the criminal code or the Sentencing Reform Act, which actually downplays the significance of rehabilitation as a penological goal by rejecting imprisonment as a means of promoting it.

*Id.* at 674. In support of this principle, Judge Posner cites 28 USC § 994(k) which states that it is inappropriate to impose a sentence of imprisonment for the purpose of rehabilitation. If ensuring the safety of the community is important, and the court believes it is, the court cannot accept that rehabilitative factors do not, in certain cases, outweigh purely retributive and deterrent factors, particularly in dealing with a young adult like Goldberg.

Furthermore, there is reason to be skeptical concerning whether the current guidelines for the specific offense with which Goldberg is charged reflect, as originally intended, an empirical analysis by the U.S. Sentencing Commission of judicial sentencing practices. On the contrary, with respect to many sex offenses, including possession of child pornography, "the frequent mandatory minimum legislation and specific directives to the Commission to amend the Guidelines make it difficult to gauge the effectiveness of any particular policy change, or to disentangle the influences of the Commission from those of Congress." U.S. Sentencing Commission, FIFTEEN YEARS OF GUIDELINES SENTENCING: AN ASSESSMENT OF HOW WELL THE FEDERAL CRIMINAL JUSTICE SYSTEM IS ACHIEVING THE GOALS OF SENTENCING REFORM. 72-73 (2004) *available at* http://www.ussc.gov/15_year/chap2.pdf (last visited April 28, 2008). Similar reasoning

led the U.S. Supreme Court to hold in *Kimbrough* that because the disparity between crack and powder cocaine sentences is not based on the institutional expertise of the Sentencing Commission, and does not take account of empirical data, a district court may accord the guidelines less deference. *Kimbrough*, 128 S. Ct at 575. At least one court has applied the reasoning of *Kimbrough* to a child pornography possession case.[3] *Baird*, 2008 WL 151258, at *4.

In conjunction with all of the above, the following represent the 3553(A)(1) factors which the court believes should be taken into consideration in sentencing:

(1) Goldberg was very young, age 20, when, confined to his house for a minor marijuana conviction, he set up a file server which allowed the trading of pornography.

(2) The psychiatric evidence in the case indicates that Goldberg was immature, restless, and impulsive for his age.

(3) The psychiatric evidence indicates that Goldberg is not a pedophile and is unlikely to actually abuse children. He is extremely interested in pornography, but his preference appears to be for post-pubescent and adult females.

(4) Goldberg is in Criminal History Category I. He has one prior conviction, for possession of marijuana, found in his car when he was stopped for a traffic infraction. This will be the defendant's first incarceration.

---

[3] "[W]hen Guidelines are not the result of 'the Commission's exercise of its characteristic institutional role, such as when they are not based on an empirical approach, but are instead keyed to or guided by statutory directives it is … 'not an abuse of discretion for a district court to conclude when sentencing a particular defendant' that application of the guideline 'yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case.'" *Baird*, 2008 WL 151258, at *4 (quoting *Kimbrough*, 128 S.Ct. at 574-75) (internal citations omitted).

(6)  There is evidence that Goldberg was abused by a sibling as a child. This abuse did not make him sexually deviant. It may, however, have contributed to mental health problems which contributed to his commission of this offense. Further, Goldberg has struggled throughout his life with ADD, diagnosed only in high school. Because of his ADD, he was made to feel like a lazy underachiever in school when, in fact, he was unable to perform better. Despite these problems, Goldberg finished high school and is one course away from graduating from college, has many friends who have been friends since childhood, and is well thought of by people in his community, including his rabbi.

(7) During the pendency of this case, Goldberg has finished college except for one language course, maintained steady employment, and attended counseling with his family. As stated above, he has violated the terms of his supervision by viewing pornography (which he admitted) and going to Milwaukee for a day for a music festival without permission, but there is no information suggesting he has violated the law.

(8) There is no evidence that Goldberg ever hurt or molested any child directly. The victim impact statements presented by the government were prepared for another case. Pornographic images of children are extremely destructive when made. When viewed, they sustain a market for their production. But comprehending the harm of viewing internet images requires a level of sophistication and maturity. A curious and immature 20 year old is unlikely to appreciate fully the destructive impact of

viewing such images, even though the same immature 20 year old would be expected to understand the harm caused by actual sexual contact with such children or by producing such images. The internet has opened broad avenues of information that are far too easily accessible to immature teenagers and young adults, and people have been known to do things online that they would not do offline.

(10) The number of images in this case was relatively small, compared to many of the published cases. This case involved hundreds, not thousands, of images, and numerous guideline enhancements have been given for the number of images, the type of images and other factors.

(11) Like the defendant in *Wachowiak*, Goldberg neither enticed nor had improper contact with any child.

(12) Since the supervision violation which led the court to require Goldberg, as a condition of supervision, to spend a period of time at the Salvation Army, he and his parents have been participating together in counseling. Both therapists who prepared reports for the court prior to sentencing commented on Goldberg's candor and the likelihood that, because of his willingness to face his conduct honestly, he was amenable to treatment.

(13) As in *Wachowiak*, the experts indicate that Goldberg has a low risk for direct sexual contact with children.

(14) As in *Wachowiak*, there are significant and far-reaching collateral consequences of such a conviction not explicitly contemplated by the guidelines. These include the stigma of having to register as a sex

offender, and the stigma of having served time in federal prison for a felony. Given Goldberg's youth, learning disability and his mental and emotional problems, these are significant burdens.

(15) As in *Wachowiak*, Goldberg has the support of a caring family. Parole Officer Fleig informed the court that Jeremy and his family have been attending counseling together. The family has been strongly supportive of this therapy and in the process of helping Jeremy prepare for incarceration.

(16) As in *Wachowiak*, there is a chance that Goldberg may not be admitted into sex offender treatment while incarcerated, in which case any period of incarceration will delay treatment which is necessary to prevent reoccurrence of this behavior and to ensure the safety of the community.

Accordingly, some substantial period of incarceration is necessary. The sentence must comply with the ruling of the Seventh Circuit. It must also reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from further crimes of the defendant. At the same time, the personal characteristics of the defendant, and the nature and circumstances of this offense, are of counterbalancing weight. As the court's review above of many other cases makes plain, the sentences in such cases vary widely. Moreover, it appears that the charging decisions vary widely and so do the advisory guideline ranges.

Accordingly, the court sentences Goldberg to 48 months imprisonment, to be followed by ten years supervised release under the conditions imposed by the court's previous sentence.[4] For the reasons set forth above, the court finds that this sentence is

---

[4] Information obtained via telephone from professionals involved in the Sexual Offender Treatment Program at the Federal Medical Center at Devens indicate that, in most cases, a sentence of 3-5 years'

sufficient, but not greater than necessary, to achieve all of the objectives of § 3553. The court recommends the Federal Medical Center at Devens as the location in which Goldberg is to be incarcerated in the hope that he will be able to participate in the Sex Offender Treatment Program that is offered at that location.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: April 30, 2008

---

incarceration followed by a lengthy period of supervision (at least 5 years) optimizes the chance that in-custody treatment will achieve its aims.